**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**JAMES HOWARD SHIFFLETT,**

        **Petitioner,**

**v.**                                                **Civil Action No. 3:05cv59**
                                                      **Criminal Action No. 3:99cr42(4)**
                                                        **(Judge Broadwater)**

**UNITED STATES OF AMERICA,**

        **Respondent.**

## REPORT AND RECOMMENDATION

This case came before the Court for an evidentiary hearing on June 8, 2006, and a continuation hearing held on June 21, 2006. Present at the June 8th hearing was Petitioner, James Howard Shifflett, and Petitioner's appointed counsel, John Bremer. Appearing by telephone was Lisa Leopold and Sharon Penwell, Petitioner's witnesses; Thomas Mucklow, on behalf of the United States; and Michael S. Santa Barbara, Petitioner's defense counsel. Present at the June 21st hearing was Mr. Leary. Appearing by telephone was Mr. Mucklow, Kathy Santa Barbara, and Penny Young. The Bureau of Prisons failed to produce Petitioner by telephone as directed by the Court.

### I. Procedural History

Petitioner initiated this case by filing a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence on June 16, 2005.[1] In the petition, Petitioner asserted six grounds for relief. On April 25, 2006, the undersigned issued a Report and Recommendation ("R&R")

---

[1] Petitioner was convicted of distributing oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and received a sentence of 192 months. Petitioner's sentence was later reduced to 151 months pursuant to an amendment to the sentencing guidelines that lowered the weight attributed to a pill.

recommending that grounds one, two, four, and six be dismissed.[2]  However, an evidentiary hearing was scheduled as to ground three and a recommendation as to ground five was deferred pending the result of that hearing.[3]

On June 6, 2006, an evidentiary hearing was held before the undersigned at the Wheeling point of holding court.  Moreover, at the request of the Respondent, a continuation hearing was held on June 21, 2006.

On June 28, 2006, the Honorable W. Craig Broadwater, United States District Judge, adopted the undersigned's initial Report and Recommendation.  In doing so, Judge Broadwater denied and dismissed grounds one, two, four and six.  However, Judge Broadwater directed the Clerk not to strike the matter from the Court's docket as an additional R&R on the remaining grounds would be forthcoming.

## II. Evidentiary Hearings

### A. June 6th Hearing

The following is a recap of the testimony provided to the Court on June 6, 2006.

1. James Howard Shifflett

---

[2] Petitioner's six grounds for relief were that:  (1) his sentence is unconstitutional in light of the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005); (2) counsel was ineffective for not objecting to the unconstitutional enhancement; (3) counsel was ineffective for failing to appeal petitioners' amended sentence; (4) the government breached the plea agreement by failing to file a Rule 35 motion for reduction of sentence after petitioner testified against Tommy Sims in state court; (5) the government improperly double counted the pills in petitioners' Presentence Investigation Report; and (6) counsel was ineffective for not objecting to the double-counting.

[3] As to ground five, the undersigned found that the issue of double-counting should have been raised on direct appeal and was barred from federal habeas review unless petitioner could show good cause for the failure.  In response, Petitioner asserted that defense counsel's failure to file an appeal constitutes good cause for failing to raise his claim on direct review and therefore, this claim should not be barred in a § 2255 proceeding.  Because the undersigned agreed that Petitioner's ineffectiveness argument in ground three, could effect his cause and prejudice argument in ground five, the undersigned deferred making a recommendation as to ground five pending the outcome of the evidentiary hearing.

2

On direct examination, Petitioner testified that he was resentenced by the Honorable W. Craig Broadwater on April 29, 2005, at the Martinsburg point of holding court. Petitioner testified that he was represented by Michael Santa Barbara at his resentencing. Petitioner testified that during the resentencing hearing, Judge Broadwater informed him that he had 10 days in which to file an appeal if he was not comfortable with the sentence he received. Petitioner testified that at the conclusion of the sentencing hearing, he turned to Mr. Santa Barbara and requested that an appeal be filed. Petitioner testified that Mr. Santa Barbara told him that an appeal would be started the next day.

Petitioner testified that after the resentencing hearing, he attempted to contact Mr. Santa Barbara on at least five occasions. Petitioner testified that after resentencing he was housed at the Eastern Regional Jail ("ERJ") for a period of time. Petitioner testified that calls made from the ERJ are collect calls that must be accepted by the answering party. Petitioner testified that he heard the secretary answer the phone and hang up. Petitioner testified that because he could not get Mr. Santa Barbara's office to accept his calls, he wrote a letter to Judge Broadwater requesting help in making sure his appeal was filed. When he did not hear from the Court, Petitioner asked one of his sisters to contact the Clerk's Office. Petitioner testified that his sister contacted the Clerk's office and was told by an employee that no letter was received by the Court and in any event, direct communication with the Judge was improper.

Petitioner testified that he requested counsel file an appeal and that counsel acknowledged this request. However, no appeal was ever filed.

On cross examination, Petitioner testified that only he and counsel were present at counsel table after resentencing. Thus, Petitioner acknowledged that it was his word against

3

counsel's. Petitioner testified that he did everything he could to assure that an appeal was filed and that he trusted his attorney to do it. Petitioner also testified that the same thing happened after his original sentencing. However, Petitioner testified that he did not inform the Court of Mr. Santa Barbara's alleged prior failure at the time of resentencing because he did not think he had a choice but to accept Mr. Santa Barbara's representation.

Also on cross examination, Petitioner testified that he did not have copies of the letter sent to Judge Broadwater or any records showing that he made any attempt to contact Mr. Santa Barbara.

Petitioner then testified that he asked his two sisters to contact Mr. Santa Barbara on his behalf. Petitioner stated that his sisters called and visited Mr. Santa Barbara's office seven or eight days after his resentencing.

Finally, on cross examination, Petitioner testified that he could not remember the specific address to which he sent the letter to Judge Broadwater, but that he did remember sending it to the Federal Courthouse located on King Street in Martinsburg[4] and that the letter was specifically addressed to Judge Broadwater.

2. Lisa Leopold

As his next witness, Petitioner called Lisa Leopold. Ms. Leopold testified that she was Petitioner's sister and that she had attended his resentencing hearing on April 29, 2005. Ms. Leopold testified that after her brother's resentencing, she spoke with Mr. Santa Barbara in the hallway outside the courtroom. Ms. Leopold testified that she asked Mr. Santa Barbara what would be done about filing an appeal in her brother's case. Ms. Leopold testified that Mr. Santa

---

[4] The Court's Martinsburg address is 217 W. King Street.

Barbara informed her that he would file an appeal right away.

Ms. Leopold then testified that her brother called her about three days after the resentencing and asked her to follow-up on his appeal. Ms. Leopold testified that she spoke to someone in Mr. Santa Barbara's office and was told that a message would be left for Mr. Santa Barbara regarding Petitioner's appeal and that Mr. Santa Barbara would call her back. Ms. Leopold stated that she gave the person in Mr. Santa Barbara's office all of her telephone numbers, including her home number and cell phone number. Ms. Leopold testified that she never received a response to her messages so she went to Mr. Santa Barbara's office in person.

Ms. Leopold testified that when she was at Mr. Santa Barbara's office, she was told that he was unavailable because he was in a meeting. Ms. Leopold testified that she left a message for Mr. Santa Barbara, but did not receive a response. Ms. Leopold testified that she specifically told Mr. Santa Barbara's office staff that her brother wanted to file an appeal.

Ms. Leopold testified that she tried to contact Mr. Santa Barbara at least 15 times.

On cross examination, Ms. Leopold testified that she had no documentation of her efforts to secure her brother's appeal. Ms. Leopold testified that her sister went with her to Mr. Santa Barbara's office, but no persons unrelated to Petitioner. Likewise, Ms. Leopold testified that when she talked to Mr. Santa Barbara after her brother's rehearing, the persons with her were her sister, her mother, and Petitioner's teenage daughter. Ms. Leopold testified that the only disinterested person present in the hallway at the time was Barry Beck, an attorney representing one of the other defendants in the case, but that she has no idea whether Mr. Beck heard her conversation with Mr. Santa Barbara. Ms. Leopold acknowledged that Mr. Beck was not present to testify at the evidentiary hearing.

Also on cross, Ms. Leopold confirmed that she did contact the Clerk's office on her brother's behalf. Ms. Leopold testified that she only asked the Clerk whether the letter was received, and not about filing an appeal on her brother's behalf. Ms. Leopold testified that she did not contact Judge Broadwater directly or the United States Attorney's Office directly.[5] Finally, Ms. Leopold testified that she was unaware that she could seek help from the Clerk of Court in filing an appeal.

3.  Sharon Penwell

On direct examination, Ms. Penwell testified that she is also Petitioner's sister. Ms. Penwell testified that she was present at her brother's resentencing and was present for the conversation with Mr. Santa Barbara in the hallway. Ms. Penwell testified that Mr. Santa Barbara stated that he would work on her brother's appeal that night or the following day as he had only 10 days to file the appeal. Ms. Penwell also testified that she contacted Mr. Santa Barbara's office on her brother's behalf. Ms. Penwell stated that she spoke to a woman named Penny on four occasions. Ms. Penwell testified that Penny told her that Mr. Santa Barbara had been given the messages about her brother's appeal. Ms. Penwell also testified that she spoke to Mr. Santa Barbara's wife, who works in the same office. Ms. Penwell testified that Mrs. Santa Barbara also told her that she would give Mr. Santa Barbara the message about Petitioner's appeal. Ms. Penwell testified that she accompanied her sister to Mr. Santa Barbara's office. Ms. Penwell testified that she thought they talked to Penny about her brother's appeal.

On cross examination, Ms. Penwell stated that the only disinterested person who may

---

[5] The undersigned is not sure how contacting the sentencing Judge or the United States Attorney's Office would have helped Petitioner. In all likelihood, Ms. Leopold would have been advised to contact Petitioner's attorney.

6

have heard any talk of an appeal was Mr. Beck.  Ms. Penwell admitted that she had no records or other documentation to support her claims that she requested an appeal be filed in her brother's case.  Ms. Penwell testified that she knows she talked to Mrs. Santa Barbara because Mrs. Santa Barbara stated her name on the phone.  Ms. Penwell testified that she did not previously mention that she spoke with Mrs. Santa Barbara because no one had asked her that information.

    4. Michael Santa Barbara

On direct examination, Mr. Santa Barbara testified that he is an attorney who works in the Martinsburg area.  Mr. Santa Barbara testified that his practice consists mostly of personal injury work and court appointed criminal defense work in both state and federal court.  Mr. Santa Barbara testified that he has been an attorney since 1990 and has always practiced in the Martinsburg area.  Mr. Santa Barbara estimated that he has handled approximately 40 to 50 criminal cases.  Each of those cases has resulted in a plea.  Mr. Santa Barbara testified that he has appeared before the Fourth Circuit Court of Appeals in civil cases and has filed appellate briefs in many criminal cases.  Mr. Santa Barbara testified that he is familiar with Rule 4 of the Federal Rules of Appellate Procedure.

Mr. Santa Barbara also testified that he was appointed to represent Petitioner in 1999 and continued to represent Petitioner until he was first sentenced.  Mr. Santa Barbara did not file an appeal of Petitioner's first sentence.  Mr. Santa Barbara testified that such an appeal would have been futile because Petitioner's plea contained a waiver.  Moreover, Mr. Santa Barbara testified that Petitioner's file does not reflect that he was requested to file an appeal.  Mr. Santa Barbara testified that a request to file an appeal is something that he would note in the file, and that if such a request had been made, he would have been obligated to file an appeal.  Mr. Santa

7

Barbara testified that Petitioner did not complain about his prior representation during the resentencing proceedings.

Mr. Santa Barbara testified that to the best of his memory, Judge Broadwater refused to hear the double-counting issue at the time of resentencing because the Judge felt it was a nonissue. Mr. Santa Barbara testified that he did not recall having a conversation with Petitioner after his resentencing about an appeal. Mr. Santa Barbara did however, remember having a conversation with Petitioner's family after the resentencing, although he recalls no conversation relating to an appeal. Further, Mr. Santa Barbara testified that he was not aware of any attempts by Petitioner or his family to contact him regarding an appeal, at least not to his memory.

Mr. Santa Barbara testified that it is his practice to accept calls from the regional jail. Mr. Santa Barbara admitted, however, that in the past, he found that his employees were not accepting calls from the jails when he was out of the office. Mr. Santa Barbara testified that he instructed his employees to not do this. Mr. Santa Barbara testified that he shares his practice with his wife, Kathy Santa Barbara, but he does not recall any conversation with her regarding Petitioner. Mr. Santa Barbara testified that his wife has been in practice since 1982 and that she is primarily a transactional lawyer. Mr. Santa Barbara testified that his wife has done appellate work and that she maintains her CLE requirements.

Mr. Santa Barbara testified that if anyone had asked him to file an appeal in Petitioner's case, he would have done so. However, Mr. Santa Barbara testified that he has no recollection of being asked nor any notes reflecting that he was asked to file an appeal.

On cross examination, Mr. Santa Barbara testified that he met with Petitioner several times before his resentencing. Mr. Santa Barbara testified that between August 2004 and April

2005, he spoke with Petitioner on the telephone and also met with him in person. Mr. Santa Barbara believed that he met with Petitioner within the 30 days prior to his resentencing to discuss the issues, including the calculation of drug weight and the alleged double-counting. Mr. Santa Barbara testified that there was not much to do to prepare Petitioner for the resentencing because the claims did not require testimony, only argument on the law. Mr. Santa Barbara testified that he believed Petitioner received a 25% reduction in sentence.

Also on cross examination, Mr. Santa Barbara testified that there were two claims at issue at Petitioner's resentencing. The first issue was a change in law and the second issue was alleged double-counting. Mr. Santa Barbara testified that he was successful on the change of law issue, but unsuccessful on the double-counting issue. Mr. Santa Barbara testified that Petitioner expressed pleasure at the change in law reduction, but that Petitioner was disappointed the Court would not hear his double-counting argument. Mr. Santa Barbara testified that he does not remember Petitioner asking him to file an appeal and that his notes are silent on whether such a request was made.

Mr. Santa Barbara testified that Petitioner had maintained the double-counting issue for at least one-year. Mr. Santa Barbara further testified that he had no further contact with Petitioner after the resentencing hearing. Mr. Santa Barbara testified that to the best of his recollection, Petitioner did not affirmatively state that he wanted to file an appeal. Moreover, Mr. Santa Barbara testified that if Petitioner had requested an appeal, it would have been in his notes. Thus, since his notes are silent, Mr. Santa Barbara testified that he can only go by his memory, which he concedes is vague, and states that Petitioner did not instruct him to file an appeal. Mr. Santa Barbara testified that he did not request Petitioner put his desires in writing.

On redirect, Mr. Santa Barbara testified that it is his practice to make notations in the file relevant to what happens in a case. Mr. Santa Barbara testified that he carries an 8 ½ x 14 yellow legal tablet for note taking. When he returns to his office, he places the notes in the memo section of his file. Mr. Santa Barbara testified that note taking is a significant part of his practice and that he relies on his notes rather than his memory because of the numerous number of clients he has, at least with respect to critical issues. Mr. Santa Barbara testified that it is his obligation to file an appeal if one is requested and that he would consider such a request a critical event. However, Mr. Santa Barbara testified that he does not ask his client if he or she wants to file an appeal, and in fact, relies on Judge Broadwater to explain the client's appellate rights.

     5. Counsel's Request For Rebuttal Witness

At the conclusion of Mr. Santa Barbara's testimony, counsel for the respondent stated that he may want to call Kathy Santa Barbara as a rebuttal witness. Counsel stated that he would talk with Mrs. Santa Barbara and let the Court know by the next day. At a hearing the following day in an unrelated case, counsel stated to the Court that he would like to call Mrs. Santa Barbara as a rebuttal witness. A follow-up hearing was therefore scheduled for June 21, 2006.

**B. June 21st Hearing**

The following is a recap of the testimony provided to the Court on June 21, 2006.

     1. Kathy Santa Barbara

On direct examination, Mrs. Santa Barbara testified that she and her husband are law partners. Mrs. Santa Barbara testified that she does not do criminal work, but that her husband

10

does. Mrs. Santa Barbara testified that she had no independent recollection of Petitioner or her husband's representation of him.

Mrs. Santa Barbara testified that her office utilizes a voicemail system and all calls are screened. Mrs. Santa Barbara testified that calls are answered by one of two legal assistants and then transferred to her or her husband depending on whose client it is. Mrs. Santa Barbara testified that if either she or her husband is not available, the caller is placed into voicemail. Mrs. Santa Barbara testified that she does not generally speak to her husband's clients.

Mrs. Santa Barbara testified that she does not know Sharon Penwell. Mrs. Santa Barbara also testified that she does not recall receiving a call from Ms. Penwell, or any member of the Shifflett family in April or May of 2005. Mrs. Santa Barbara testified that she is aware of the Rules of Appellate Procedure and is sensitive to the time limitations for filing an appeal. Mrs. Santa Barbara testified that she did not speak to anyone with regard to Petitioner's case or anyone requesting that an appeal be filed on his behalf.

On cross examination, Mrs. Santa Barbara testified that she does answer the phone if she is the only one in the office. However, she screens the calls using a caller id system and only answers the phone if she recognizes the name or number as belonging to one of her clients, otherwise she lets the call go into voicemail. Mrs. Santa Barbara clarified her earlier testimony by stating that she absolutely did not speak to Sharon Penwell, not that she simply did not recall doing so. Mrs. Santa Barbara testified that she knows she never took such a call because of the way in which she screens her calls and also because she would never take a call on a criminal matter or one in which someone requested to speak to her husband. Mrs. Santa Barbara stated she would certainly remember such a call, even though if it took place some 14 months earlier.

2. Penny Young

On direct examination, Ms. Young testified that she is one of two legal assistants at the Santa Barbara Law Offices in Martinsburg, West Virginia. Ms. Young testified that she was employed in this capacity in April and May of 2005, as was Lisa Santana.[6] Ms. Young noted that Ms. Santana is no longer so employed. Ms. Young testified that she is familiar with the name James Howard Shifflett. Ms. Young testified that she spoke with Petitioner about the change in law and his sentence reduction. Ms. Young remembers Petitioner requesting Mr. Santa Barbara's assistance in getting his sentence reduced. Ms. Young does not remember Petitioner or anyone else calling regarding the filing of an appeal.

Ms. Young testified that it is the policy of the office to accept calls from the ERJ. If Mr. Santa Barbara is not available, Ms. Young offers to help the caller if she can, and if not, the caller is given the option to leave a voicemail message. Ms. Young testified that Mr. Santa Barbara generally is unable to return an inmate's call so his usual practice is to visit the client. Ms. Young testified that she knows of no circumstances in which calls are not accepted.

Ms. Young then testified that she does not know Lisa Leopold nor does she know Sharon Penwell. However, Ms. Young testified that she is familiar with a Sharon Shifflett. Specifically, Ms. Young testified that Sharon Shifflett came into the office to make sure that Petitioner had contacted Mr. Santa Barbara about a sentence reduction. Ms. Young also testified that she looked over the office's phone records from Verizon, but was unable to ascertain whether Petitioner had attempted to call the office after his resentencing. Ms. Young stated that while the

---

[6] The Court believes that Ms. Young identified the other legal assistant as Lisa Santana, although the name is not entirely clear from the recording of the hearing.

records showed that collect calls were accepted during that time, the records do not specify where those calls originated or who made them. Moreover, Ms. Young testified that she has no written documentation regarding phone messages because their messages are computerized.

Ms. Young then testified that she has on one occasion refused a call from the ERJ. Ms. Young testified that it was a call from Miguel Delgado and that she refused the call because she was threatened. Ms. Young testified that Mr. Delgado's call was the only one she has ever refused. Ms. Young also testified that had she been given any messages for Mr. Santa Barbara she would have relayed those messages.

On cross examination, Ms. Young explained how computerized phone messaging works. Ms. Young also testified that she only recalled Petitioner calling the office on one occasion and that was at or about the time the federal sentencing law was changed. Ms. Young testified that she had nothing in front of her to reflect the date Ms. Penwell came into the office. However, Ms. Young testified that her conversation with Ms. Penwell was about the change in the law and not about an appeal. Specifically, Ms. Young testified that Ms. Penwell asked if Petitioner had contacted Mr. Santa Barbara about the change in law. Ms. Young testified that Ms. Penwell also asked her for legal advice which she is not at liberty to give. Ms. Young testified that she told Ms. Penwell that she could not give such advice, but that Mr. Santa Barbara would do everything he could within the law, to help Petitioner. Ms. Young testified that Ms. Penwell did not talk to her about an appeal after Petitioner's resentencing. Ms. Young testified that she absolutely would remember such a conversation because it would have prompted her to have a conference with Mr. Santa Barbara.

### III. Analysis

13

"In Order to establish a Sixth Amendment violation based on counsel's failure to appeal, [Petitioner] must prove that (1) counsel was ineffective and (2) but for counsel's ineffectiveness, an appeal would have been filed." United States v. Witherspoon, 231 F.3d 923, 926 (4th Cir. 2000) (citation omitted). Moreover, the Fourth Circuit Court of Appeals has held that a criminal defense attorney's failure to file a notice of appeal when requested by his client is per se ineffective. See United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993). In rendering this decision, the Court opined:

> Persons convicted in federal district courts have a right to a direct appeal. Coppedge v. United States, 369 U.S. 438, 82 S.Ct.917, 8 L.E.2d 21 (1962). In addition, the Sixth Amendment right to counsel extends to the direct appeal, Douglas v. California, 372 U.S. 353, 83 S.Ct. 917, 8 L.Ed.2d 811 (1963), and it obligates the attorney to file the appeal and identify possible issues for the court even if, in the attorney's opinion, those issues are not meritorious. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

Id. at 41.

"When a client does not specifically instruct counsel to file an appeal, however, whether counsel has been ineffective by failing to appeal depends upon 'whether counsel in fact consulted with the defendant about an appeal.'" Witherspoon, 231 F.3d at 926 (quoting Roe v. Flores-Ortega, 528 U.S. 470, 478 (2000)). The term consult "convey[s] a specific meaning- advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant' wishes." Flores-Ortega, at 478. In addition, the Supreme Court recognized that "[i]f counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Id. However, when counsel has not consulted with his client, the Court must then ask if the

14

failure to consult itself constitutes deficient performance. Id.

In determining whether or not the failure to consult was deficient, the Supreme Court has stated that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reasons to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appeal. In making this determination, courts must take into account all the information counsel knew or should have known." Flores-Ortega, at 480. Moreover, the Court must consider all relevant factors in a given case to properly determine whether a rational defendant would have desired an appeal. Id.

In this case, even discounting the testimony of Petitioner's sisters and their alleged attempts to contact Mr. Santa Barbara,[7] the court finds that Petitioner has an express recollection of requesting that his attorney file an appeal while sitting at counsel table immediately after resentencing. Mr. Santa Barbara, on the other hand, has no recollection of the events that took place at counsel table after Petitioner's resentencing. Rather, Mr. Santa Barbara relies on the silence of his notes. However, even assuming that Petitioner did not request an appeal as Mr. Santa Barbara's notes suggest, the testimony was that Mr. Santa Barbara did not explain Petitioner's appellate rights to him. Instead, he merely relied on Judge Broadwater to explain those rights and the undersigned is of the opinion that such action was ineffective in this case.

The circumstances of this case show that Petitioner made two arguments in his motion for resentencing, a change in law and alleged double-counting. Mr. Santa Barbara testified that

---

[7] The testimony of Petitioner's sisters was largely contradicted by that of Mrs. Santa Barbara and Ms. Young. Therefore, rather than finding one witness more or less credible than the others, the Court will discount the testimony of those parties.

15

the change in law was the stronger argument, but that Petitioner felt strongly about the double-counting argument and that Petitioner had maintained the double-counting issue for at least a year prior to his resentencing. Moreover, Mr. Santa Barbara testified that he knew Petitioner was disappointed that Judge Broadwater would not consider the double-counting issue. Even though Mr. Santa Barbara did not think the double-counting issue would be successful on appeal, it would appear to the Court that he had a duty in this case to at least discuss the possibility of appealing the issue with Petitioner. Relying on Judge Broadwater's colloquy at the sentencing hearing is not sufficient. Judge Broadwater could not ethically discuss with the Petitioner the "advantages and disadvantages of taking an appeal" or of "ascertaining whether Petitioner wished to file an appeal" as to the rejected argument. That responsibility was Mr. Santa Barbara's.

Thus, because the undisputed testimony in this case was that Petitioner requested that his defense counsel file an appeal but failed to do so, counsel was per se ineffective. Alternately, even if Petitioner did not specifically request that an appeal be filed, the undersigned is of the opinion that under Flores-Ortega and Witherspoon, defense counsel was ineffective for failing to explain Petitioner's appellate rights to him.

## IV. Recommendation

Based on the foregoing, the undersigned recommends that the petition be GRANTED as to ground three and Petitioner be re-sentenced so that he may file a direct appeal. Because the issue of the alleged double-counting would then be viable on direct appeal, it is premature for the Court to make a ruling as to that issue in the instant petition. Thus, ground five should be DISMISSED without prejudice.

Within ten (10) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the Honorable W. Craig Broadwater, United States District Judge. Failure to timely file objections to the recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to provide a copy of this Report and Recommendation to counsel of record.

DATED: September 22, 2006.

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE